UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOUGLAS PERRY, | ) |
| Plaintiff, | ) Case No. _____ |
| v. | ) JURY TRIAL DEMANDED |
| BMC STOCK HOLDINGS, INC., JAMES O'LEARY, DAVE FLITMAN, MARK ALEXANDER, CHEEMIN BO-LINN, CORY J. BOYDSTON, HENRY BUCKLEY, DAVID BULLOCK, DAVID L. KELTNER, MICHAEL MILLER, and CARL R. VERTUCA JR., | ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, Douglas Perry, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against BMC Stock Holdings, Inc. ("BMC" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with BMC, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed merger of Boston Merger Sub I Inc. ("Merger Sub"), a wholly-owned subsidiary of Builders FirstSource, Inc. ("Builders First") with and into BMC (the "Proposed Transaction"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of

1

candor/disclosure under state law.

2. On August 26, 2020, BMC entered into an agreement and plan of merger with Builders First (the "Merger Agreement"), whereby Merger Sub will merge with and into BMC, with BMC surviving the merger as a wholly-owned subsidiary of Builders First. Upon consummation of the Proposed Transaction, each share of BMC common stock will be converted into the right to receive 1.3125 shares of Builders First common stock ("Merger Consideration"). Thereafter, Builders First shareholders will own approximately 57% of the combined company and BMC shareholders will own 43%.

3. On October 8, 2020, in order to convince BMC public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Registration Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for BMC and Builders First; (ii) the valuation analyses performed by BMC's financial advisor, Moelis & Company LLC ("Moelis"); and (iii) the "discretionary work fee" Moelis may receive from BMC in connection with the Proposed Transaction.

5. The Proposed Transaction is expected to close in late 2020 or early 2021, so the special meeting of BMC's shareholders to vote on the merger is imminent (the "Shareholder Vote"). Therefore, it is imperative that the material information that has been omitted from the Proxy be disclosed prior to the Shareholder Vote, so BMC's shareholders can properly exercise their corporate voting rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless

and until the material information discussed below is disclosed to BMC's public common shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, BMC's common stock trades on the NasdaqGS, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Further, BMC's proxy solicitor, Innisfree M&A Incorporated is located in this District at 501 Madison Avenue, New York, NY 10022. Last, BMC's legal counsel, Simpson

Thacher & Bartlett LLP is located in this District at 425 Lexington Avenue, New York, NY 10017.

## PARTIES

10. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of BMC common stock.

11. Defendant BMC is a public company incorporated under the laws of Delaware with principal executive offices located at 4800 Falls of Neuse Rd., Raleigh, NC. BMC's common stock is traded on the NasdaqGS under the ticker symbol "BMCH."

12. Defendant James O'Leary is, and has been at all relevant times, a director of the Company and Chairman of the Board.

13. Defendant Dave Flitman is, and has been at all relevant times, a director of the Company and its President and Chief Executive Officer.

14. Defendant Mark Alexander is, and has been at all relevant times, a director of the Company.

15. Defendant Cheemin Bo-Linn is, and has been at all relevant times, a director of the Company.

16. Defendant Cory J. Boydston is, and has been at all relevant times, a director of the Company.

17. Defendant Henry Buckley is, and has been at all relevant times, a director of the Company.

18. Defendant David Bullock is, and has been at all relevant times, a director of the Company.

19. Defendant David L. Keltner is, and has been at all relevant times, a director of the Company.

20. Defendant Michael Miller is, and has been at all relevant times, a director of the

Company.

21. Defendant Carl R. Vertuca Jr. is, and has been at all relevant times, a director of the Company.

22. The defendants identified in paragraphs 12 through 21 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with BMC, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

23. BMC, together with its subsidiaries, provides various building products and services for homebuilder and professional contractor customers in the United States. It offers structural components, including floor trusses, roof trusses, wall panels, and engineered wood products; lumber and lumber sheet goods, such as dimensional lumber, and plywood and oriented strand board products used in on-site house framing; and millwork, doors, and windows comprising interior and exterior doors, windows, interior trims, custom millworks, moldings, stairs and stair parts, cabinetry, and other products. The Company also provides other building products and services that consist of hardware, wood boards, gypsum, insulation, roofing, siding, and flooring; and design assistance and professional installation services, as well as professional estimating, product advisory, and product display services. It primarily serves large-scale production homebuilders, custom homebuilders, multi-family builders, and professional repair and remodeling contractors. The Company provides its products through its distribution locations and eCommerce platform. BMC was founded in 1922 and is headquartered in Raleigh, North Carolina.

24. Builders First manufactures and supplies building materials, manufactured components, and construction services to professional homebuilders, sub-contractors, remodelers, and consumers in the United States. Builders First operates through four segments: Northeast, Southeast, South, and West. It offers lumber and lumber sheet goods comprising dimensional

lumber, plywood, and oriented strand board products that are used in on-site house framing; manufactured products, such as wood floor and roof trusses, steel roof trusses, wall panels, stairs, and engineered wood products; and windows, and interior and exterior door units, as well as interior trims and custom products under the Synboard brand name. Builders First also offers gypsum, roofing, and insulation products, including wallboards, ceilings, joint treatments, and finishes; and siding, metal, and concrete products, such as vinyl, composite, and wood siding products, as well as exterior trims, other exteriors, metal studs, and cement products. In addition, it provides other building products and services, such as cabinets and hardware, as well as turn-key framing, shell construction, design assistance, and professional installation services. Builders First was formerly known as BSL Holdings, Inc. and changed its name to Builders FirstSource, Inc. in October 1999. Builders FirstSource, Inc. was founded in 1998 and is headquartered in Dallas, Texas.

25. According to the August 27, 2020, joint press release announcing the Proposed Transaction:

> *Builders FirstSource to Combine with BMC Stock Holdings, Creating the Nation's Premier Supplier of Building Materials and Services*
>
> DALLAS and RALEIGH, N.C., Aug. 27, 2020 (GLOBE NEWSWIRE) -- Builders FirstSource, Inc. (Nasdaq: BLDR) ("Builders FirstSource") and BMC Stock Holdings, Inc. (NASDAQ: BMCH) ("BMC"), today announced that they have entered into a definitive merger agreement under which Builders FirstSource and BMC will combine in an all-stock merger transaction to create the nation's premier supplier of building materials and services. The companies will host a joint conference call today at 7:30 a.m. Central Time (8:30 a.m. Eastern Time) to discuss the transaction.
>
> Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, BMC shareholders will receive a fixed exchange ratio of 1.3125 shares of Builders FirstSource common stock for each share of BMC common stock. Upon completion of the merger, existing Builders FirstSource shareholders will own approximately 57% and existing BMC shareholders will own approximately 43% of the combined company on a fully diluted basis. The merger is expected to be tax free for U.S. federal income tax purposes.
>
> After a 90-day transition period following the completion of the merger,

> Chad Crow, current Chief Executive Officer of Builders FirstSource, will retire as previously announced and will be succeeded as Chief Executive Officer of the combined company by Dave Flitman, current Chief Executive Officer of BMC. Thereafter, Mr. Crow will continue to be available on a consulting basis to the combined company for a period of time to support the integration execution and to ensure an orderly transition.
>
> Mr. Crow said, "This is a transformational opportunity that unites two outstanding and complementary companies, providing enhanced scale and superior returns as we build upon a new, larger platform. Builders FirstSource and BMC together will have a very diverse portfolio of value-added offerings and greater resources to more closely partner with and serve customers. The transaction is expected to produce tremendous value for the shareholders of both companies through the realization of significant cost synergies, the realization of attractive growth opportunities and the acceleration of technological innovation. Similar to the success of our prior acquisition of ProBuild, we will be poised to capitalize on the strength of our combined platform and the significant upside potential in our key end markets to increase sales, reduce costs and improve cash flow. We are excited about the opportunities ahead and look forward to quickly realizing the benefits of this transaction."
>
> Mr. Flitman stated, "We believe this strategic combination of two great organizations is an exciting step forward for both BMC and Builders FirstSource, as well as for our associates, our customers and other key stakeholders. As we accomplished in our prior combination with Stock Building Supply, this transformational merger will enable BMC to further accelerate our profitable growth strategy with a company that also focuses on providing a broad product portfolio and differentiated capabilities deployed through a customer-focused service model. Our customers and associates will benefit from the strengths of our exceptional teams, who share common values and a dedication to providing innovative services and solutions. We believe this compelling combination will enhance our ability to deliver outstanding customer service, generate attractive financial returns and create shareholder value. I look forward to working closely with Chad and the collective management teams of both companies to complete the transaction and further advance our next chapter of profitable growth."

(Emphasis in original).

26. The Merger Consideration represents inadequate compensation for BMC shares. Proxy at 39, 123-124.

27. Therefore, it is imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for

7

shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Transaction.

**The Proxy Omits Material Information**

28.     On October 8, 2020, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The Shareholder Vote on the Proposed Transaction is forthcoming.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction, and thus the Proxy should be amended.

29.     First, the Proxy fails to provide critical information regarding financial projections for the Company and Builders First. In particular, the Proxy fails to disclose: Net Income Projections. Defendants elected to summarize multiple sets of financial projections, but they excised and failed to disclose the readily available Net Income Projections. By disclosing certain projections in the Proxy and withholding the Net Income Projections, Defendants render the summary tables of projections on pages 127-129 of the Proxy materially incomplete and provide a misleading valuation picture of BMC and Builders First.  Simply put, net income projections are irreplaceable when it comes to fully, fairly, and accurately understanding a company's projections and value. Moreover, the Proxy makes numerous references to Net Income throughout the Proxy.

30.     Further, the Proxy should disclose all underlying line items for Adjusted EBITDA and Unlevered free cash flow, including all line items referenced in the footnotes thereto.

31.     Investors are concerned, perhaps above all else, with the projections and cash flows of the companies in which they invest.  Under sound corporate finance theory, the market value of a company should be premised on the expected unlevered free cash flows of the corporation.

Accordingly, the question that the Company's shareholders need to answer in determining whether to vote in favor of the Proposed Transaction is clear: Is the Merger Consideration fair compensation given BMC's projected cash flows? Without the line items underlying BMC's unlevered free cash flows, the Company's shareholders will not be able to properly assess this critical question and evaluate the fairness of the Merger Consideration. Under the same logic, Defendants' failure to disclose the line items used to calculate Adjusted EBITDA and/or Net Income renders the Proxy materially misleading.

32. If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).

33. Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all of one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the information related to the projections relied upon by Moelis, but have omitted crucial information regarding the line items for unlevered free cash flows and Adjusted EBITDA, as well as Net Income on page 127-129 rendering the Proxy misleading.

34. Second, the Proxy omits material information regarding Moelis' financial analyses with respect to the Proposed Transaction.

35. In summarizing Moelis' *BMC DCF Analysis*, the Proxy fails to disclose: (i) the inputs and assumptions underlying the discount rates of 9.0% to 10.5% (CAPM components referred to as WACC in the Proxy); (ii) the estimated terminal values and assumptions underlying the perpetuity growth rates of 1.5% and 2.5% used to derive the terminal value; and (iii) the selected multiple range of 6.5x to 8.7x used in the DCF. Proxy at 121.

36. Similarly, Moelis failed to disclose the following in *Builders First DCF Analysis*: (i) the inputs and assumptions underlying the discount rates of 8.75% to 10.25% (CAPM components referred to as WACC in the Proxy); (ii) the estimated terminal values and assumptions underlying the perpetuity growth rates of 1.5% and 2.5% used to derive the terminal value; and (iii) the selected multiple range of 6.9x to 9.4x used in the DCF. *Id.* at 121-22.

37. The same is true for Moelis' *Net Synergies Estimates DCF Analysis* that also omits the following in the Proxy: (i) the inputs and assumptions underlying the utilized range of discount rates of 8.75% to 10.25% (CAPM components referred to as WACC in the Proxy); (ii) the estimated terminal values and assumptions underlying the perpetuity growth rates of 1.5% and 2.5% used to derive the terminal value, and (iii) the selected multiple range of 6.9x to 9.4x. *Id.* at 122.

38. These key inputs are material to BMC shareholders, and their omission renders the summary of Moelis' Discounted Cash Flow Analyses incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id.*  As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars*….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, BMC's shareholders cannot evaluate for themselves the reliability of Moelis' Discounted Cash Flow Analyses, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or were the result of an unreasonable judgment by Moelis, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

39. Additionally, Moelis performed a *Selected Public Companies* analysis but it does not disclose any implied per share value derived from it (or whether it considered any results or observed any multiples for the companies observed). Proxy at 123. In fact, the Proxy states that Moelis used it to inform the range of unlevered betas and debt to total capitalization ratios that it chose to use in the aforementioned *DCF* analysis to derive the WACC range but does not disclose any key inputs observed. *Id.*

40. Furthermore, Moelis omitted the following information in its *Premiums Paid Analysis*: (i) the names of the 94 companies it selected for this analysis; and (ii) the premia paid in each transaction, or at least a range of low to high, or at a minimum the mean (i.e. the average), instead the Proxy only discloses the median premia paid which just tells shareholders the middle number but lacks any real significance. *Id.* at 123-24.

41. Third, the Proxy fails to disclose the criteria to determine Moelis "discretionary work fee" it may earn in connection with the Proposed Transaction. *Id.* at 124. Also, the Proxy fails to disclose the amount of the "discretionary work fee" that could be awarded to Moelis. *Id.*

42. Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

43. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

46. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

48. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial projections for BMC and Builders First; (ii) the valuation analyses performed by Moelis in support of its fairness opinion; and (iii) the "discretionary work fee" Moelis could receive in connection with the Proposed Transaction.

49. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

50. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Moelis reviewed and discussed its financial

analyses with the Board, and further states that the Board considered the financial analyses provided by Moelis, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Moelis' analyses in connection with their receipt of the fairness opinions, question Moelis as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

52. BMC is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

53. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through

the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of BMC within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of BMC, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

58. In addition, as the Proxy sets forth at length, and as described herein, the Individual

Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT III**
**Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure**

62. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

64. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to

Plaintiff and the Company's other public shareholders.

65. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

66. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 19, 2020  **MONTEVERDE & ASSOCIATES PC**

By: */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*